E-FILED
Friday, 13 August, 2021 10:02:07 AM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| THOMAS W. SUEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 20-cv-3022 |
| | ) | |
| ANDREW SAUL, Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION**

TOM SCHANZLE-HASKINS, U.S. MAGISTRATE JUDGE:

This matter comes before the Court on Defendant Commissioner of Social Security's Motion to Dismiss for Lack of Subject Matter Jurisdiction or, in the Alternative, for Summary Affirmance (d/e 23) (Motion). The parties consented to proceed before this Court. Consent to the Exercise of Jurisdiction by a United States Magistrate Judge and Reference Order entered September 2, 2020 (d/e 16). For the reasons stated below, the Motion is ALLOWED. This Court dismisses this matter for lack of subject matter jurisdiction.

STATEMENT OF FACTS

Suey's 2012 Application

In March 2012, Plaintiff Thomas Suey filed applications (collectively, 2012 Application) for Medicare Part A Hospital Insurance and Social Security Retirement Insurance Benefits and Medicare Part A Benefits (collectively, Retirement Benefits). Certified Transcript of Proceedings before the Social Security Administration (d/e 10 and 11) (R.), at 94-102, 106-07.[1] On April 6, 2012, and on April 18, 2012, the Social Security Administration denied Suey's application for Retirement Benefits. R. 115-16, 118-19.[2] On March 20, 2013, Suey's application for Retirement Benefits was denied again on reconsideration. R. 150-51. On April 2, 2013, Suey requested a hearing before an Administrative Law Judge (ALJ). R. 166.

The August 14, 2014 Decision of the ALJ

On May 21, 2014, the ALJ conducted an evidentiary hearing in this case. R. 597-626. On August 14, 2014, the ALJ issued a decision denying Suey's application for Retirement Benefits. R. 85-93. The ALJ found that

[1] Suey applied for Medicare Part A on March 4, 2012 (R. 94-102) and applied for Social Security Retirement Insurance Benefits on March 9, 2012 (R. 106-07).

[2] Suey was initially awarded free Medicare Part A insurance, but the award was rescinded. On April 6, 2012, Suey was informed that he could receive Medicare Part A insurance, but he had to pay a premium for it. Suey could receive Medicare Part B insurance if he paid the same premium that all participants are required to pay. R. 115-16.

Suey became a minister in the United Pentecostal Church on October 6, 1977. Ministers are subject to paying Self-Employment taxes for Social Security and Medicare. On September 3, 1981, Suey filed a Form 4361, Application for Exemption from Self Employment Tax for Use by Ministers, Member of Religious Orders and Christian Science Practitioners (Exemption Application). His Exemption Application was approved by the IRS on December 3, 1981. Suey, thereby, stopped participating in Social Security and Medicare. Suey's earnings stopped being covered earnings subject to Self-Employment taxes. See 42 U.S.C. §§ 410 and 415(a)(7)(A)(ii). The ALJ found that Suey continued to work as a minister until retirement in April 2012. R. 85-88.

Suey had a limited opportunity to revoke his exemption. The Ticket to Work and Work Incentives Improvement Act of 1999 created a two-year window in 1999 and 2000 to revoke a minister's exemption from paying self-employment taxes. A minister who wanted to revoke an exemption had to file an IRS form 2031 by April 15, 2002, or with an extension by October 15, 2002. R. 86.

Suey testified at the hearing that he did not file a Form 2031 on advice of his accountant. R. 606, 614. Suey testified that his accountant told him not to revoke his exemption from Self-Employment Taxes because

Suey's employer Christ Tabernacle (Church) could treat Suey as an administrative employee subject to Federal Insurance Contribution Act (FICA) taxes. Beginning in 1999 or 2000, the Church began deducting the employee portion of FICA taxes from Suey's salary and paying the employee and employer portion of FICA taxes for Suey. The Church continued deducting and paying FICA taxes for Suey through 2011.

Suey also submitted to the ALJ a copy of his 2000 tax return. Suey's 2000 tax return included a "Miscellaneous Statement" which stated,

> TAXPAYER HAS BEEN EXEMPT FROM SELF-EMPLOYMENT TAXES AS A MINISTER THROUGH 1999. HOWEVER, SINCE FORM 2031 WAS TIMELY FILED TO REVOKE THE EXEMPTION, THE TAXPAYER IS BACK IN THE SOCIAL SECURITY PROGRAM FOR THE YEAR 2000 AND THEREAFTER.

R. 91, 228, 254.[3] Neither Suey nor his accountant had a copy of the Form 2031 referenced in the Miscellaneous Statement. Further, the IRS had no record of Suey filing a Form 2031. R. 92. Weighing all the evidence, including Suey's testimony that he did not revoke the 1981 exemption and the conflicting Miscellaneous Statement on the 2000 tax return indicating that Suey filed the Form 2031, the ALJ found that Suey never revoked his 1981 exemption. R. 92.

---

[3] Suey submitted the 2000 tax return after the hearing, but the ALJ included the 2000 tax return in the record and considered it in making the decision. See R. 92.

The ALJ found that the Church's payment of FICA taxes did not matter. The Church's payment of FICA taxes for Suey was improper because a minister is subject to Self-Employment taxes, not FICA taxes. Employers pay FICA taxes for employees, but do not pay FICA taxes for individuals such as ministers who are subject to Self-Employment taxes. The ALJ further found that, to the extent that Suey performed non-ministerial duties as a regular church employee, the Church had not properly elected to treat Suey as an employee rather than a religious worker subject to Self-Employment taxes. The ALJ stated the IRS did not allow voluntary social security payments if no taxes are due. R. 92; cf. https://www.irs.gov/individuals/international-taxpayers/social-security-tax-medicare-tax-and-self-employment ("You cannot make voluntary social security payments if no taxes are due.") last visited 3/26/2021. The ALJ concluded that the Church's FICA tax payment were not proper and did not cause Suey's earnings to be counted as covered earnings. R. 93.

The ALJ concluded that Suey did not qualify for Retirement Benefits. To qualify for Retirement Benefits, a person must work and earn 40 quarters of covered earnings, or roughly 10 years. 42 U.S.C. § 414(a)(2). Suey paid Self-Employment Taxes for 19 quarters before his 1981 exemption, but he did not have any covered earnings thereafter. The ALJ

found that: (1) Suey was exempt from Social Security Self-Employment taxes after he secured his 1981 exemption, (2) Suey did not revoke the exemption during the two-year window in 1999-2000, and (3) Suey did not establish that the Church properly paid FICA taxes on his behalf after 1999. Suey, therefore, did not have 40 quarters of covered earnings and did not qualify for Retirement Benefits. The ALJ denied Suey's application for Retirement Benefits. R. 92-94.

On September 5, 2017, the Social Security Administration Appeals Council denied Suey's Request for Review. R. 49-50. The decision of the ALJ then became the final decision of the Commissioner. R. 49. Suey had 60 days to seek judicial review of this final decision. 40 U.S.C.§ 405(g). Suey did not seek judicial review.

<u>Suey's 2018 Application and the</u>

<u>May 22, 2019 Dismissal Order</u>

On August 28, 2018, Suey filed a second application for Retirement Benefits (2018 Application). R. 482-88. On October 18, 2018, the 2018 Application was denied. R. 489-91. On December 20, 2018, the 2018 Application was denied on reconsideration. R. 498-99. On January 7, 2019, Suey requested an evidentiary hearing before an ALJ. R. 500-03. On May 22, 2019, the ALJ dismissed the 2018 Application without a

hearing. R. 43-47. The ALJ determined that the August 14, 2014 decision denying the 2012 Application was a final decision of the Commissioner and Suey did not seek judicial review of that decision. The ALJ determined that the August 14, 2014 decision was final and barred his second 2018 Application under the doctrine of administrative res judicata. R. 47; 20 C.F.R. § 404.957(c)(1). The regulations authorized the ALJ to enter the dismissal order without a hearing if an application was barred by res judicata. 20 C.F.R. § 404.957(c)(1).

<u>The Request to Reopen the 2012 Application</u>

On September 9, 2019, Suey filed a request with the Appeals Council to review the May 22, 2019 dismissal order. Suey also asked the Appeals Council to reopen his initial 2012 Application and reverse the August 14, 2014 decision. R. 9-40. Suey asked the Appeals Council to reopen the 2012 Application because he had new material evidence.[4] R. 10. The new material evidence was a letter from Suey to his counsel dated September 3, 2019. The letter stated that Suey had requested copies of his tax returns from 1999 and 2000. Suey stated in the letter:

> WE JUST RECEIVED BACK A LETTER FROM IRS STATING THAT THESE FORMS ARE AVAILABLE FOR A LIMITED NUMBER OF YEARS.

[4] The submission also included Suey's 2000 federal and Illinois state tax returns that had already been submitted to the ALJ and an undated Online Social Security statement for Suey. R. 18-40, see R. 248-68.

> "WE NO LONGER HAVE THE RETURNS YOU REQUESTED FOR TX YEAR 2000." THEY WERE DESROYED (sic) IN ACCORDANCE WITH THE US CONGRESS.
>
> THIS SHOWS ME ONE THING. THEY HAVE ABSOLUTELY NO PROOF THAT THE FORM WE FILED WAS NOT SENT IN.
>
> IT STATED BOLDY ON MY 2000 TAX RETURN THAT WE HAD FILED FORM 2031 PROMPTLY TO THE IRS OFFICE.
>
> THOSE IN IRS SHOULD HAVE TAKEN NOTE OF THAT FORM WHEN IT ARRIVED, ESPECIALLY WHEN THEY REVEIED (sic) MY TAX RETURN AND SAW MY STATEMENT ON IT, BUT SOMEBODY LOST SOMETHNG OR LAID IT ASIDE. THEY HAVE NO RECORD OF PROOF THAT THE FORM 2031 DID NOT COME TO THEIR OFFICE AS WE WERE TOLD TO DO. BUT WE HAVE IT BOLDLY PRINTD (sic) ON OUR RETURN.

R. 12-13 (emphasis in large font in original). Suey attached to the letter an IRS Form 13873-P, RAIVS Request for Tax Return Photocopy dated August 15, 2019 (IRS Response). The IRS Response stated, in part:

> 21. Tax returns are available for a limited number of years. We no longer have the returns you requested for tax years 2000 (sic). We destroyed these returns by authorization of the United States Congress.

R. 16.

On December 13, 2019, the Appeals Council denied Suey's request for review of the 2018 Application or to reopen the 2012 Application. R. 7-9. The Appeals Council found no reason to change the May 22, 2019

dismissal of the 2018 Application. The Appeals Council also considered Suey's request to reopen the 2012 Application based upon new evidence, "We also looked at Form 1387-P, RAIVS request for Tax Return Photocopy (4 pages). This evidence does not constitute new facts or preclude the application of administrative res judicata." R. 8. Suey then filed this action for judicial review. The Commissioner moves to dismiss for lack of jurisdiction. Suey opposes the Motion.

ANALYSIS

This Court generally only has subject matter jurisdiction for review of a final decision of the Commissioner made after a hearing. 42 U.S.C. § 405(g). Generally, this Court lacks jurisdiction to review a decision by the Commissioner that may be made without a hearing. Califano, 430 U.S. at 107-09.

The ALJ dismissed the 2018 Application without a hearing pursuant to 20 C.F.R. § 404.957(c)(1). R. 47. Generally, this Court lacks jurisdiction to review this decision. Califano, 430 U.S. at 107-09.

Even if the Court could review the decision, the ALJ properly dismissed the 2018 Application as being barred by the doctrine of res judicata. Suey filed his 2012 Application; his 2012 Application was denied initially and on reconsideration; he requested and received a hearing before

an ALJ; the ALJ denied his application after the hearing; he appealed the ALJ's decision to the Appeals Council; and the Appeals Council denied his request for review on September 5, 2017. The decision was final, and Suey had 60 days to seek judicial review. 42 U.S.C. § 405(g). He did not. Suey could not file a second application seeking the same relief before the Social Security Administration based on the same facts. The 2018 Application was barred by administrative res judicata. 20 C.F.R. § 404.957(c)(1); see United States v. Utah Const. & Mining Co., 384 U.S. 394, 422 (1966) ("When an administrative agency is acting in a judicial capacity and resolved disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose.").

Even though Suey could not file a second application, he had four years after the Appeals Council denied his request to ask the Commissioner to reopen his 2012 Application based on new material evidence. 20 C.F.R. §§ 404.988, 404.989(a)(1). Suey made a timely request to reopen on September 9, 2019. The Commissioner is authorized to decide whether to reopen a case without a hearing. 42 U.S.C. § 405(b); Califano, 430 U.S. at 108. Again, § 405(g) only authorizes judicial review of final decisions of the Commissioner made after a hearing. Generally,

this Court lacks jurisdiction to review the Commissioner's decision made without a hearing. Califano, 430 U.S. at 108-09.

Suey argues that his case fits two exceptions to the general rule of no subject matter jurisdiction to review the Defendant Commissioner's decisions made without a hearing. One exception allows a claimant to seek judicial review if he raises a constitutional claim. Califano, 430 U.S. at 108-09 (citing Mathews v Eldridge, 424 U.S. 319, 319 (1976); Weinberger v. Salfi, 422 U.S. 749 (1975)). The constitutional claim must be something more than a "Respondent seek[ing] only an additional opportunity to establish that he satisfies the Social Security Act's eligibility standards for . . . benefits." Califano, 430 U.S. at 109. In this case, Suey is only requesting an additional opportunity to establish his claim for Retirement Benefits. Suey does not assert a constitutional claim that would give this Court jurisdiction to review the Commissioner's decision to deny his request to reopen his case. This exception to the general rule does not apply.

A second exception allows that a claimant may seek judicial review of a denial of a request to reopen if the claimant was denied the opportunity to have a hearing on his original claim due to the fault of the Social Security Administration. Boley v. Colvin, 761 F.3d 803 (7th Cir. 2014); Craven v.

Colvin, 2017 WL 28094(W.D. Wis. January 3, 2017). In Boley, the Commission failed to give Boley's attorney a required notice that Boley's claim had been denied on reconsideration and Boley had 60 days to request a hearing before the ALJ. Due to the Social Security Administration's error, Boley filed her request for a hearing several months late. The Social Security Administration denied her untimely request for a hearing and closed her case. Boley, 761 F.3d at 804. In Craven, the Social Security Administration failed to notify Craven properly that she needed to provide a signed and dated medical release form to process her application. Craven's application was dismissed because she failed to file the signed and dated release. Craven, 2017 WL 28094 at *1. In both Boley and Craven the claimants could not seek judicial review because the claimants did not complete the administrative process due to the fault of the Social Security Administration. The claimants' only recourse was to ask the Commissioner to reopen their claims. Under these circumstances, the Court has jurisdiction to review the Commissioner's decision to deny a request to reopen the case. Boley, 761 F.3d at 807-08. The Califano decision did not apply in these cases because Boley and Craven never had an opportunity to have a hearing at all while the claimant in Califano had a full evidentiary hearing before an ALJ and a full right to seek judicial review

of that decision before he filed a request to reopen. Boley, 761 F.3d at 807.

Suey's case does not fall into this exception recognized in Boley and Craven. Suey received the full administrative process. Suey had an initial review of his claim, a review on reconsideration, a hearing before an ALJ, a request for review before the Appeals Council, and a right to seek judicial review. The general rule of no jurisdiction established by the Supreme Court in Califano applies.

Suey argues that the decision in Salinas v. United States, __ U.S. __, 141 S.Ct. 691 (2021) "erodes" the Califano decision. Plaintiff's Response to Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction or, in the Alternative for Summary Affirmance (d/e 24) (Suey Response), at 6. Suey is incorrect. The Salinas decision concerned jurisdiction to review a discretionary decision of the Railroad Retirement Board under the Railroad Retirement Act and the Railroad Unemployment Insurance Act (collectively Railroad Retirement Acts). Salinas, 141 S.Ct. at 700-01; 45 U.S.C. §§ 231g and 355(f). The Supreme Court held that the jurisdictional grant for judicial review under the Railroad Retirement Act was different from the jurisdictional grant for judicial review under the Social Security Act, 42 U.S.C. § 405(g). Salinas, 141 S.Ct. at 699. The Railroad Retirement Act

authorized judicial review of discretionary decisions to deny requests to reopen claims; however, the Supreme Court restated that the Social Security Act did not grant jurisdiction to review decisions made without a hearing. Id. The Salinas decision, thus, reaffirmed the Califano decision. The general rule established in Califano controls this case. The Court lacks jurisdiction to review both the ALJ's May 22, 2019 dismissal of the 2018 Application and the Commissioner's decision to deny Suey's request to reopen his case. Califano, 430 U.S. at 108-09.

Suey complains that he is being denied due process. See Suey Response, at 5-6. Suey is mistaken. He received full due process on his claim. He had notice of the denial of his 2012 Application both initially and on reconsideration. He had a hearing on May 21, 2014. The ALJ issued the decision on August 14, 2014. Suey had a right to request a review of that decision to the Appeals Council, and he did so. The Appeals Council denied his request for review. Suey had a right to seek judicial review but did not. 40 U.S.C. § 405(g). His failure to take advantage of his right to judicial review did not deny him due process. Dusanek v. Hannon, 677 F.2d 538, 543 (7th Cir. 1982) ("The availability of recourse to a constitutionally sufficient administrative procedure satisfies due process requirements if the complainant merely declines or fails to take advantage

of the administrative procedure.”). The Commissioner’s subsequent decisions in 2019 do not change the fact that Suey already received due process.

Finally, Suey argues that the decision of the Commissioner should be reversed because, in 2019, the IRS did not retain a copy of Suey’s 2000 tax return. Suey argues the fact that, in 2019, the IRS did not retain a 2000 tax return constitutes spoliation of evidence and entitles him to a new hearing. Suey is again incorrect. The August 14, 2014 decision of the ALJ was a final decision that Suey did not appeal. The Appeals Council considered his request to reopen the case, including the new evidence that the IRS in 2019 did not retain a copy of Suey’s 2000 tax return. The Appeals Council considered these matters and denied his request to reopen his 2012 Application. That decision was made without a hearing. This Court lacks jurisdiction to review that decision. Califano, 430 U.S. at 108-09.

Moreover, even if the Court somehow had jurisdiction to consider Suey’s spoliation argument, the argument is meritless. Suey speculates that the IRS statement in 2019 that it did not then have the 2000 tax return proves that the IRS destroyed his 2000 tax return before his May 21,2014 hearing, and as a result, he could not use the 2000 tax return as evidence

in his original hearing in 2014. Suey, however, submitted a copy of his 2000 tax return to the ALJ in 2014, and the ALJ considered the 2000 tax return in rendering the August 14, 2014 decision. The fact that, in 2019, the IRS did not retain a 2000 tax return had no impact on the ALJ's decision. The spoliation argument is meritless.

THEREFORE, IT IS ORDERED that Defendant Commissioner of Social Security's Motion to Dismiss for Lack of Subject Matter Jurisdiction or, in the Alternative, for Summary Affirmance (d/e 23) is ALLOWED. This case is DISMISSED for lack of jurisdiction. THIS CASE IS CLOSED.

ENTER: August 12, 2021

s/ *Tom Schanzle-Haskins*
TOM SCHANZLE-HASKINS
UNITED STATES MAGISTRATE JUDGE